**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ROGER WALKER,

        *Plaintiff*,

   v.

UNITED STATES CENTER FOR
SAFESPORT, Inc., and USA
GYMNASTICS,

        *Defendants*.

No. 24-cv-05650 (MEF)(SDA)


**OPINION and ORDER**


\*    \*    \*

For the purposes of this brief Opinion and Order, the Court
largely assumes familiarity with the allegations and procedural
history of this case.

\*    \*    \*

A coach ("the Coach"[1]) was suspended from a national sports
organization[2] after an investigation.  See First Amended
Complaint ("Complaint") ¶ 6.

He sued both the entity that conducted the investigation ("the
Investigator"[3]) and the sports organization ("the Sports
Organization").

\*    \*    \*

---

[1]  Roger Walker.

[2]  USA Gymnastics.

[3]  United States Center for SafeSport, Inc.

The Defendant-Investigator has moved to dismiss, based in part on the argument that the Plaintiff's claims must be arbitrated because of a membership agreement ("the Membership Agreement") between the Plaintiff and the Defendant-Sports Organization. See Investigator's Motion to Dismiss at 10-11; see also Investigator's Reply Brief at 2-4.

Per the Defendant-Investigator: the relevant Membership Agreements incorporate the Investigator's policies --- and those include a mandatory arbitration provision.[4]  See Investigator's Motion to Dismiss at 10-11.  By signing off on the Membership Agreements, the argument goes, the Plaintiff was also signing off on an agreement that all his claims arising from an investigation conducted by the Investigator would go through arbitration.  See id.

The legal basis for this argument may be sound.  See Navarro v. U.S. Ctr. for SafeSport, 2025 WL 209166, at *10 (W.D. Va. Jan. 15, 2025); Doe v. U.S. Ctr. for SafeSport, Inc., 2024 WL 3924663, at *8-*9 (W.D. Wash. Aug. 23, 2024); Sanderson v. U.S. Ctr. for SafeSport, Inc., 2021 WL 3206322, at *5 (D. Colo. July 29, 2021); Callaghan v. U.S. Ctr. for SafeSport, 2018 WL 4107951, at *5-*6 (M.D. Fla. Aug. 29, 2018); see also Nyman v. U.S. Ctr. for SafeSport, 2021 WL 857084, at *3 (N.D. Oh. Mar. 8, 2021) ("Arbitration is the sole and exclusive method of resolving any challenge. . . . There is no second-level arbitration appeal process.") (cleaned up); cf. Gonzalez v. U.S. Ctr. for SafeSport, 374 F. Supp. 3d 1284, 1294 (S.D. Fla. 2019).

But in this case, the factual and procedural history is vexing.

*    *    *

One of the Plaintiff's claims is that the Membership Agreements were illegal in various ways, and that means there could be no properly binding arbitration agreement.  See Complaint ¶¶ 9,

---

[4]   The provision:

> Each Participant, by virtue of membership . . . agrees to abide by and be subject to [arbitration] as the sole and exclusive method of resolving any challenge to the [Investigator's] eligibility decision(s) or the [Investigator's] processes.

Investigator's Motion to Dismiss, Exhibit 5, at 31; see also 36 U.S.C. § 220541(c)(1).

241-56; see also Plaintiff's Opposition Brief to the
Investigator's Motion to Dismiss at 18-20.

This would seem to suggest that the Plaintiff's Membership
Agreements are "integral to . . . the [C]omplaint" and therefore
may be relied upon here.  In re Burlington Coat Factory Sec.
Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

But the Plaintiff has not attached any Membership Agreement to
his Complaint.[5]

For their part, the Defendants have attached various items to
their motions to dismiss, see Investigator's Motion to Dismiss
at 7 n.7, Sports Organization's Motion to Dismiss, Exhibit A,
and they strongly imply that these items closely track the
Membership Agreements the Plaintiff assertedly signed.  See
Docket Entry 46, at 1-2; Docket Entry 47, at 1-2.

But the Plaintiff-Coach disagrees, suggesting that the versions
of the Membership Agreements that the Defendants attach (that
went into effect post-2022) may be different than the ones
applicable to his conduct (that allegedly occurred pre-2022).
See Docket Entry 43, at 1.

                    *        *        *

In short: the relevant Membership Agreements appear "integral to
. . . the [C]omplaint," Burlington Coat Factory, 114 F.3d at
1426 --- but the parties have not put all of them before the
Court.

In addition, the Plaintiff has suggested that he may not have
entered the Membership Agreements "voluntarily," and he has

---

[5]  And there is another wrinkle.  In supplemental briefing filed
over the last two weeks, the Plaintiff says he did not
"voluntarily" sign onto the Membership Agreements.  Docket
Entry 43, at 1.  This means that even if the Plaintiff's
Membership Agreements were before the Court, it is not clear
they could be considered.  On motions to dismiss, "a court may
consider an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document."  Schulsinger v. Perchetti,
724 F. App'x 132, 133 n.1 (3d Cir. 2018) (cleaned up); see also
Solecitto v. Axon Enter., Inc., 2024 WL 4213684, at *1 (D.N.J.
Sept. 16, 2024).  Whether an involuntary agreement can meet this
standard is not obvious.

implied that the form Membership Agreements that the Defendants have attached are not in substance the same as the form Membership Agreements that he signed.

\*      \*      \*

In these circumstances, the Court will deny the Investigator's motion to dismiss and convert it into a motion for summary judgment.  See generally Dixon v. Golden-Masano-Bradley, L. Firm, 228 F. App'x 142 (3d Cir. 2007) (describing this procedure); see also Solecitto, 2024 WL 4213684, at *1 (same).

The parties will be permitted to conduct highly targeted discovery on the arbitrability question, under the supervision of the United States Magistrate Judge.  The Magistrate Judge will decide how to proceed in her sole discretion and on a schedule she will set.[6]

\*      \*      \*

There is one loose end: the Defendant-Sports Organization has also separately moved to dismiss.[7]

The Defendant-Sports Organization's motion to dismiss is also denied, pending the resolution of the highly targeted discovery

---

[6]  One option may be to allow discovery that is tightly limited to (a) producing the precise relevant agreements the Plaintiff assertedly signed, (b) deposing the Plaintiff solely as to the circumstances of his signing of the agreements, and (c) deposing other witnesses to the limited extent they have testimony that bears directly on the arbitrability question.  After that very narrow discovery is completed, the Defendants might then be allowed to move for summary judgment on the theory that the case must be arbitrated, explaining which claims, if any, may fall within the scope of arbitration.  If such a motion is granted as to all claims, the case would be arbitrated.  If not, the Court can take up any other issues at that time, culminating in further motion practice as may be necessary.

[7]  It does not move on the ground of the above mandatory arbitration provision.  See Sports Organization's Motion to Dismiss at 1.  But it suggests that a different arbitration provision may be in play in certain contexts to govern the relationship between it and the Plaintiff.  See id. at 10–11.

set out above.  Cf. Landis v. N. Am. Co., 299 U.S. 248, 254
(1936).  It may be renewed as may be appropriate later.

*     *     *

In conclusion: the Defendants' motions to dismiss are denied
without prejudice.

*     *     *

IT IS on this 18th day of March, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

5